UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21483-CIV-HOEVELER

SCOTT JENSEN and
LAURA JENSEN,

     Plaintiffs,

v.

MIAMI-DADE COUNTY,

     Defendant.

_____/

## ORDER GRANTING MOTION TO VOLUNTARILY DISMISS COUNTS II AND III; GRANTING, IN PART, DEFENDANT'S MOTION FOR RECONSIDERATION AS TO ENTRY OF SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION; AND DIRECTING FURTHER BRIEFING

THIS CAUSE comes before the Court on the parties' motions for reconsideration of the Court's denial of summary judgment to all parties. The Court heard arguments from the parties as to these motions at a conference on December 19, 2012. On November 21, 2012, this Court denied the parties' motions for summary judgment, as I found there to be a genuine dispute as to facts that are material to the Plaintiffs' claims, and insufficient evidence to support entry of summary judgment for any party. Defendant filed an appeal on December 20, and Plaintiffs immediately thereafter filed a request to dismiss their state law claims (which would moot the appeal). This Court entered an Order on December 21, dismissing Counts II and III although, as noted by the Court of Appeals in its order remanding the case to this Court (and closing the file as to the Defendant's appeal), I lacked jurisdiction to dismiss Plaintiffs' state law claims at the time and should

instead have indicated an intention to do so upon remand. The case now having been remanded, this Court hereby

GRANTS Plaintiffs' Motion for Voluntary Dismissal as to Counts II and III.

## INTRODUCTION

As a result of the dismissal of the state law claims, the sole remaining claims are found in Counts I and IV of Plaintiffs' Third Amended Complaint. Defendant's motion for reconsideration (as to the denial of summary judgment) argues that the Court erred in denying summary judgment as to these federal law claims. Defendant argues that Count I is a *respondeat superior* claim, which is improperly brought under 42 U.S.C. § 1983, and that Count IV cannot succeed because Plaintiffs have failed to identify a final policymaker within Miami-Dade County whom adopted the alleged unofficial custom or practice relating to the use of excessive force.

Plaintiffs also seek reconsideration of the denial of their motion for summary judgment - which the Court has determined must be DENIED, as Plaintiffs have not established a basis for entry of summary judgment in their favor.

## COUNT I

As to Defendant's pending motion for reconsideration, which argues that the Court erred in denying Defendant's request for summary judgment as to the Plaintiffs' claims in Count I, the Court has determined that the motion for

2

reconsideration should be GRANTED as to Count I,[1] as a claim for vicarious liability is not recognized under 42 U.S.C. § 1983. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).

COUNT IV

In denying the Defendant's motion for summary judgment as to Count IV, this Court evaluated - as I must - the evidence in the light most favorable to the non-moving party. In order to impose liability on a municipality under Section 1983, a plaintiff must establish that he suffered an injury that was caused by a deliberate action by the municipality's decisionmaker(s). To summarize briefly, this case has two main issues: whether Plaintiff was injured by Defendant while in the custody of Defendant and, if so, whether that injury was the result of a deliberate action by the Defendant's policymakers. Upon reconsideration, the Court has determined that Defendant is not entitled to summary judgment as to the first issue, but that further briefing is required as to the second issue.

Was Plaintiff injured by Defendant?

Defendant argues that Plaintiffs have not established that Plaintiff suffered a constitutional injury, i.e., Defendant argues that there is an absence of direct evidence of Plaintiff being beaten. However, it is undisputed that Plaintiff entered

---

[1] Plaintiffs allege, in Count I, that "[t]he actions of the officers assigned to the Pre-trial Detention Center are deemed to have been the acts of the Defendant." ¶ 19, Third Amended Complaint.

3

the Pre-Trial Detention Center without injury and that he was injured at some time prior to his recovery at the hospital several days later. Plaintiff argues that his physical injuries - the existence of which, again, is not disputed by Defendant[2] - must have been caused by Defendant. In support, Plaintiff offers his own testimony that he recalls waking up strapped to a gurney, and then spent several days at the hospital,[3] and offers photographs[4] purporting to show the extent of his injuries.[5]

Defendant argues that Plaintiff is "unable to present any evidence, or recall any facts, establishing the alleged violation" and is "incapable of testifying about

---

[2]Defendant does dispute the extent of the injuries and, of course, the cause of the injuries.

[3]According to Plaintiff's deposition testimony, he was escorted (on foot) from the holding cell by corrections officers. Plaintiff does not remember anything after that until he awoke on a gurney, strapped down, with a corrections officer standing nearby; Plaintiff then remembers waking up in the intensive care section of the hospital five or six days later. ECF No. 115-1, pp. 43-44, 66-67.

[4]Photographs were provided that appear to be Plaintiff in a hospital bed, with some photos indicating bruising/discoloration on his neck and legs, and other photos indicating that Plaintiff was intubated. ECF No. 117-5. While the photos are not described specifically as to a date or time that they were taken, Defendant does not dispute that Plaintiff was intubated. Defense counsel claims, however, that the intubation was necessary due to Plaintiff's suffering from an altered mental status and agitation from alcohol withdrawal. ECF No. 136. (Defendant's assertion that the Defendant was not the cause of any complications after Plaintiff was hospitalized relies on medical records, and the review of such records by a proposed expert witness; neither the records nor the witness's review have been provided to the Court as of this date. Defendant previously requested to supplement the record with the expert medical testimony of Dr. Richard Dellerson; the request is GRANTED.)

[5]Plaintiffs also have a report from a proposed expert indicating that "it is extremely unlikely - if not impossible - for the injuries suffered by [Plaintiff] to have occurred via the mechanism described by the [Defendant's proposed expert]." ECF No. 111-1. The Court has not relied on that report, nor opinion, in reaching a decision on summary judgment.

4

any alleged use of force," such that "evidence about what actually occurred must be drawn from the inmates' statements that Plaintiff fell off of his bunk bed and hit his heat [sic]." ECF No. 131.[6] However, Plaintiff has testified that he woke up on a gurney, and has provided photos purporting to show that he was injured, as noted above. Plaintiff also has provided copies of Defendant's records indicating that an Officer Willis took Jensen to the clinic (from the cell), and that an Officer Tompkins transported Jenkins to the hospital, i.e., that he remained in the custody of Defendant at all times prior to arriving at the hospital.[7] Such evidence - although weak - at least raises a reasonable inference as to a material fact and is not a "complete failure of proof" of evidence on the issue.

While the Plaintiffs' evidence in this case is weak, the Defendant's evidence, at least in part, also suffers from frailty. As the Court must, at this stage, examine the evidence in the light most favorable to the non-moving party, the Court does not find the two identical declarations of former pretrial detainees, which were obtained by Defendant five years after the date of the incident,[8] to be sufficiently persuasive

---

[6]This is an inaccurate summary of the two pretrial detainees' statements (they reported seeing Jensen "having a seizure and hitting his head on the bunk bed before falling to the ground"), and also is inconsistent with the statement in the incident report that "Jensen had a seizure ... <u>while walking from the restroom</u> [and] hit his head on the bunk prior to falling to the ground." ECF No. 114-4 (emphasis added).

[7]Neither Officer Willis (ECF No. 115-6, pp. 38-39) nor Officer Tompkins (ECF No. 115-5, pp. 64-65, 67, 69-70) recalled any facts related to the transport of Jensen, i.e., they did not remember escorting Jensen.

[8]The record indicates that approximately 25-30 detainees were in the holding cell with Plaintiff at the Pre-Trial Detention Center. ECF No. 114. At a scheduling conference before this Court in May 2010, prior counsel for Defendant stated that

to eliminate a question of fact. Nor is the Defendant's incident report, which was not accompanied by witness statements and was not formally signed until two months after the incident, sufficient to eliminate a question of material fact as to what injury was sustained by Plaintiff while at the Pre-Trial Detention Center.[9] Indeed, the witness statements are inconsistent with the incident report.

Each of the two detainees state that they "recall seeing Mr. Jensen having a seizure and hitting his head on the bunk bed before falling to the ground." ECF Nos. 114-2, 114-3. The incident report states that "Jensen had a seizure ... while walking from the restroom [and] hit his head on the bunk prior to falling to the ground." ECF No. 114-4.[10] The identical witness statements also report that they "never saw any Miami-Dade correction or police office officer [sic], or anyone else, ... make any physical contact with Mr. Jensen." ECF Nos. 114-2, 114-3. However, the Defendant's incident report states that a nurse responded to the scene of Jensen's injury with a wheelchair and that an Officer Willis escorted Jensen to the clinic - it seems incredible that neither the nurse nor Officer Willis "made any physical contact" with Jensen, whose injuries were serious enough that Defendant's clinic

---

the detainees all reported that Plaintiff had a seizure, but no record evidence from detainees has been provided other than the two declarations noted above.

[9]Nor has video surveillance evidence been offered by any party.

[10]Plaintiff testified that he had no history of major injuries or emergency room visits - other than a broken elbow in 2004, ECF No. 115-1, p. 18, and it has not been suggested that he had ever had a seizure prior to the incident at issue.

6

staff determined that Jensen needed to be treated at the hospital.[11]  In short, the Court finds the witness statements to be of little evidentiary value.

The Court simply does not find that the law requires, under the facts presented by the Plaintiffs, that Jensen describe with particularity the infliction of the injury and the name of the perpetrator in order to be able to make a claim of constitutional injury.  For example, the Court would not be inclined to dismiss a proper § 1983 claim brought by a person with sight impairment whom could not identify the specific corrections officer who attacked her, as long as she presented evidence of her injury and a plausible theory as to how it had occurred while in the custody of the corrections officer.  In Velazquez v. City of Hialeah, 484 F.3d 1340 (11th Cir. 2007), the Eleventh Circuit rejected a municipality's argument that because a person did not see who beat him, there would be no evidence at trial from which a jury might assign liability for the beating.  "This is not the law.  Were this the law, all that police officers would have to do to use excessive force on an arrestee without fear of consequence would be to put a bag over the arrestee's head and administer the beating in silence." Id. at 1342.  In Velazquez, two officers admitted being present during the arrest of Velazquez, and were sued by Velazquez under 42 U.S.C. § 1983 for the alleged use of excessive force during the arrest.  Velazquez did not see which officer beat him, and the City of Hialeah had no report of any beating.

---

[11]Officer Willis testified that the clinic was on a different floor in the Pre-Trial Detention Center and that if she were escorting someone to the clinic she probably would have the person in handcuffs (behind their back) and then walk down the stairs. ECF No. 115-6, p. 24 (Transcript of Deposition of Willis on March 8, 2011).  She did not recall ever transporting an individual out of the cell in a wheelchair. Id. at p. 23.

The Eleventh Circuit found that Velazquez had presented a triable issue of fact, noting that the jury could infer from his testimony that excessive force was used. "His testimony that two officers were present, coupled with their admission that they were present, permits the jury, if it believes that he was beaten, to find that both of the officers administered the excessive force or that one beat him while the other failed to intervene." Id.

The Court finds that the evidence, when taken in the light most favorable to Plaintiff, is sufficient to withstand Defendant's request for summary judgment as to the question of whether Plaintiff was injured by Defendant's employees. It may be that a jury will find that Plaintiff was not beaten, or it may be that a jury will find that Plaintiff was beaten so severely that he lost consciousness. To find for the Defendant as to this issue, based on the record before me at present, would be to find that someone who was beaten so severely that they cannot recall what happened would not be able to proceed with a claim under Section 1983. Or, to phrase it similarly to the appellate court's language in Velazquez, a finding for Defendant at this stage would suggest that all that corrections officers would have to do to use excessive force on a detainee without fear of consequence would be to administer a severe enough beating to cause unconsciousness. This is not the law.

In light of the parties' strikingly divergent views as to how Plaintiff was injured, and the evidence presented in summary judgment briefing, I have determined, again, that there was sufficient record evidence to create a question of fact as to the circumstances surrounding Plaintiff's injury while in the custody of

the Defendant. However, even though Defendant has not established a basis for entry of summary judgment as to the question of whether Defendant was injured by Defendant's employees, this case will not proceed to trial unless Plaintiffs can establish pertinent knowledge by a final decisionmaker of the County and an intentional failure to act on that knowledge.

Final Decisionmaker

It is abundantly clear that this case will not proceed to trial unless it is established that either: 1) the Defendant's County Manager prior to the January 2007 change in local authority, or 2) the County Mayor after that date and before the date of the incident in September 2007, or 3) the County Commission,[12] had notice at some time prior to September 2007 of a need to train or supervise County corrections officers as to the use of excessive force and then consciously disregarded that risk. Defendant argues persuasively that Plaintiffs have failed to identify precisely which of these decisionmakers, if any, had knowledge of the risk of the use of excessive force and then disregarded that risk.

Plaintiffs argue that the report of the United States Department of Justice ("DOJ") reveals that excessive force incidents apparently were occurring for a period of time prior to the commencement of the DOJ investigation in early 2008. Plaintiffs rely heavily on that report, but have not demonstrated that the DOJ

---

[12]It is undisputed that the final policy making authority for Defendant rests with either the County Commission or the County Mayor at present, and previously included the County Manager.

investigation was brought to the attention of a County decisionmaker prior to September 8, 2007, or that any other indication by DOJ was provided to a County decisionmaker regarding the use of excessive force in the Pre-Trial Detention Center before the incident involving Scott Jensen.

Plaintiffs also rely on the documented sustained finding of the use of excessive force by Officer Tory Tompkins[13] as to an incident on May 28, 2007. ECF No. 117-8 (Memorandum of Miami-Dade County, dated November 19, 2007, from Captain Daniel R. Mera, Facility Supervisor, Pre-Trial Detention Center, to Chief Manuel Fernandez, East Operations Division, Corrections & Rehabilitation Dept., regarding Disposition of Personnel Complaint 228-PC-PTDC-07).[14] As this same officer is implicated in the present case as having been a possible source of Plaintiff's injury, the Court finds that the sustained finding of excessive force (from an incident approximately three months earlier) would be relevant, but only if it had been established that a final decisionmaker for Defendant had knowledge of the incident involving Officer Tompkins. According to the County's records, Chief Fernandez "approved" the determination (of excessive force) on December 12, 2007, which is a date after the incident involving Plaintiff Jensen, and therefore the Chief's approval of the decision does not suggest that Chief Fernandez had notice of

---

[13] The Court observes that the finding of excessive force was based on a statement provided by another corrections officer.

[14] Defendant argues that it "is entirely unclear whether this even occurred before or after the incident here" (ECF No. 135) and yet the document in the record clearly reveals that the date of Officer Tompkins demonstrated use of excessive force was May 28, 2007.

the use of force by Officer Tompkins prior to the date of the incident at issue in this case, and, in any event, Chief Fernandez is not a final decisionmaker for the County. Two pages from the Personnel Complaint also were provided, which note that Officer Tompkins provided a sworn statement to Sergeant Asbell at the Internal Affairs Unit on August 29, 2007, in which he denied the use of excessive force in the incident on May 28, 2007 (see pp. 15-16 of 228-PC-PTDC-07, included as pp. 1-2 of ECF No. 117-8). While the testimony was provided ten days prior to the incident involving Plaintiff, it was provided to Internal Affairs, which is not a final decisionmaker of the County. No evidence indicates that this information was provided to the County's final decisionmaker(s) before September 8, 2007.

In sum, in light of the evidence before me at present, I am inclined to reconsider my denial of Defendant's motion for summary judgment as it is unclear which final decisionmaker of the Defendant, if any, had knowledge prior to September 8, 2007, of the misuse of excessive force by Defendant's employees. While some supervisory personnel may have known of Officer Tompkins' previous use of excessive force before the incident involving Plaintiff, it is unclear whether any final decisionmaker of the Defendant had knowledge of the use of excessive force at the Pre-Trial Detention Center prior to the date of Plaintiff's injury. The Court has determined that Plaintiffs shall have one final opportunity to submit briefing - with specific evidentiary support - demonstrating that the County's final decisionmaker(s) knew, prior to September 8, 2007, of the risk of serious harm from the improper use of force by Defendant's employees and consciously disregarded

11

that risk.

## CONCLUSION

As stated above, the Court has determined that the County is entitled to summary judgment as to Count I. The Court also is inclined to grant summary judgment in favor of the County on the Section 1983 claims (Count IV) unless Plaintiffs demonstrate that Defendant's final decisionmaker(s) had knowledge - before Plaintiff's injury - of a problem with the use of excessive force by Defendant's employees and consciously disregarded the risk. Plaintiff shall have a final opportunity to present evidence as to this issue, and shall do so no later than April 16. Defendant may file a response to Plaintiff's submission no later than April 30, and Plaintiff's may reply before May 8, 2013. All counsel are cautioned that the further briefing requested in this Order must be clear, concise, and properly supported by specific citations to the facts; there is no need to fully address arguments previously made, the emphasis instead should be on specific evidence purporting to support these arguments.

In light of the above, trial in this matter is hereby continued until further notice.

DONE AND ORDERED in Chambers in Miami this 19th day of March 2013.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT COURT JUDGE

Copies furnished:   counsel of record